IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | : | |
| MESEARCH MEDIA TECHNOLOGIES LIMITED, | : : | Case No. 24-21982-JCM |
| *Debtor,* | : : | Chapter 11 |
| ARTHUR CRIVELLA and CRIVELLA HOLDINGS LIMITED, | : : : | Adversary No. 25-2083-JCM Related to Doc Nos. 5, 8, 12, 15 |
| *Plaintiffs,* | : : | |
| v. | : : | |
| MESEARCH MEDIA TECHNOLOGIES LIMITED and GAME CREEK HOLDINGS, LLC, | : : : : : | |
| *Defendants.* | : | |

## MEMORANDUM OPINION

Based on Arthur Crivella and Crivella Holdings Limited's ("Plaintiffs") motions to dismiss filed in Adversary Nos. 25-2048-JCM and 25-2049-JCM, the Court was under the impression Plaintiffs shared the Court's sentiment that now that the Chapter 11 Plan has been confirmed and fully consummated, this case is ripe for closing. However, before a final decree could be issued, Plaintiffs decided to take another bite at the apple in their quest to reinterpret and contest the confirmed Plan. Despite setting forth identical arguments several times throughout this case and withdrawing their appeal[1] challenging the confirmation of the Plan from the District Court, Plaintiffs filed the ***Amended Complaint Pursuant to U.S.C. § 1144 and Rule 7001(e) of***

---

[1] *See Final Order* entered by the Honorable William S. Stickman, United States District Court for the Western District of Pennsylvania (Doc. 423) at Bankruptcy Case No. 24-21982-JCM ("Main Case") stating Appellants Arthur Crivella and Crivella Holdings limited are withdrawing their appeal and consent to dismissal with prejudice.

1

***the Federal Rules of Bankruptcy Procedure for Revocation of Plan Confirmation*** ("Complaint") (Doc. 5). The *Complaint* raises the identical arguments previously set forth by Plaintiffs at Plan confirmation and again in their response to the Debtor's claim objection. Nevertheless, Plaintiffs once again re-assert the same unfounded arguments that they are owed funds under the terms of the confirmed Plan and that the Plan was confirmed as a result of material misrepresentations; now insisting that the confirmation order should be revoked under 11 U.S.C. § 1144 as being procured by fraud. For the reasons set forth below, the Court will not revoke the confirmation order and will grant MeSearch Media Technologies Limited and Game Creek Holdings, LLC's ("Defendants") ***Motion to Dismiss*** ("Motion") (Doc. 8).

## JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(a) and 1334 as well as the Order of Reference entered by the United States District Court for the Western District of Pennsylvania on October 16, 1984. This matter is a core proceeding under 28 U.S.C. § 157(b)(1), (b)(2)(A), (L) and (O).

## STANDARD

The *Motion* seeks dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6), which is made applicable to an adversary proceeding in Bankruptcy Court through Federal Rule of Bankruptcy Procedure 7012(b). Accordingly, the Court must accept all well-pleaded facts as true and draw all inferences in favor of the non-moving party. *Fowler v. UPMC Shadyside,* 578 F.3d 203, 210-11 (3d Cir. 2009). When ruling on a motion to dismiss, the Court may take into consideration matters of public record and may take judicial notice of the public filings and prior

hearings[2] before the Court at any stage of the proceeding. Fed.R.Evid. 201;[3] *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 322 (2007) (on motion to dismiss under Rule 12(b)(6), the court must take into consideration all "matters of which a court may take judicial notice.").

## DISCUSSION

### *Res Judicata/Collateral Estoppel*

Defendants argue in their *Motion* that this adversary proceeding should be dismissed under the doctrines of res judicata and collateral estoppel since the arguments raised in the *Complaint* were finally litigated during the Chapter 11 case. Under the doctrine of res judicata, or claim preclusion, a claim is barred from relitigation if there was: "(1) a final judgment on the merits in a prior suit involving (2) the same parties or privies and (3) a subsequent suit based on the same cause of action." *Duhaney v. Attorney General of U.S.,* 621 F.3d 340, 347 (3d Cir. 2010) (quoting *In re Mullarkey,* 536 F.3d 215, 225 (3d Cir. 2008)). To determine whether a suit is based on the same "cause of action" as a prior suit, courts broadly decide "whether there is an 'essential similarity of the underlying events giving rise to the various legal claims.'" *In re Cowden,* 337 B.R. 512, 529 (Bankr. W.D. Pa. 2006)(quoting *CoreStates Bank, N.A. v. HulsAmerica, Inc.,* 176 F.3d 187, 203 (3d Cir. 1999)).

Collateral estoppel, or issue preclusion, avoids relitigation of an issue even if it is brought under a different cause of action. *In re Bertolotti,* 470 B.R. 356, 359 (Bankr. W.D. Pa. 2012). For issue preclusion to apply there must have been (1) an identical issue in the prior case as in the current case (2) a final judgment on the merits (3) the same parties, and (4) a determination in the prior proceeding that was essential to the judgment. *Id.*

---

[2] The Court may take judicial notice of the factual arguments made in prior hearing transcripts. *See In re Ohai,* 2023 WL 4228659 * 2 (Bankr. N.D. Ga. 2023).

[3] Made applicable in bankruptcy proceedings by Fed.R.Bankr.P. 9017 and Fed.R.Evid. 1101.

This *Complaint* seeks, under 11 U.S.C. § 1144, to revoke the *Order Confirming Plan* ("Confirmation Order") entered by the Court on May 8, 2025 (Doc. 342 in Main Case) which confirmed the *Second Amended Chapter 11 Plan of Reorganization of MeSearch Media Technologies Limited filed by Creditor Game Creek Holdings, LLC Dated March 26, 2025* ("Plan") (Doc. 262 in Main Case). The *Complaint* alleges that Game Creek Holdings, LLC ("Game Creek") introduced the *Declaration of Joseph Lawrence,* filed on March 26, 2025 ("Declaration") (Doc. 265 in Main Case), proffering that $6,500,000 was available for Plan funding with no intention of actually paying that amount. Further, the *Complaint* takes issue with the alleged identity of the Chief Financial Officer of the Reorganized Debtor, which is believed to be Oracio Flores, who was formerly an employee of a separate entity, OWNLocal. Finally, the *Complaint* protests the fact that the Reorganized Debtor may have merged with OWNLocal. The *Complaint* then summarily concludes that those facts constitute fraud justifying revocation of the Confirmation Order pursuant to § 1144.

The Plaintiffs in this case have continually misinterpreted the *Declaration* of Joseph Lawrence filed by Game Creek prior to Plan confirmation and have repeatedly misconstrued it to conclude that Arthur Crivella, as an equity holder, is owed an additional distribution through the confirmed Plan. The *Declaration* states that in lieu of the Plan depending on the future income of the Debtor, it would be funded by the Richard M. Scaife 2004 Grantor Trust which had allocated at least $6,500,000 to fund the Plan, and on the effective date Game Creek would "assume/pay the Debtor's debt in excess of $3,000,000." *Declaration*, ¶ 21. Turning to the provisions of the Plan, the Plan specifically provided that "Each holder of a Class 4 Allowed Equity Interest shall receive their pro rata share of a $100,000 paid on the effective date, which shall be subject to higher and better offers at the confirmation hearing." (of which there were none). *Plan*, p. 10, ¶ 5.4. Contrary

4

to Plaintiffs' assertions, there were no Plan provisions stating any portion of the $6.5 million set aside for plan funding[4] would increase the dividend to equity security holders in the event it was not needed to pay valid claims. The Plan provided for the fixed amount of $100,000 to be shared among the equity holders, period. *Id.*

At the request of Crivella Holdings Limited, Crivella Technologies Limited, and Arthur Crivella ("Crivella"), on April 23, 2025, the Court held an evidentiary hearing on Plan confirmation. At the hearing, Counsel for the Crivella inquired how Crivella's $6,080,000 claim filed at Claim No. 2 would be funded under the Plan in the event it was deemed allowed. *Transcript of April 23, 2025 Confirmation Hearing* ("Transcript"), (Doc. 368 in Main Case) p. 45, l. 5 – p. 46, l. 4. Joseph Lawrence explained that there would be ample funds, since most of the debt owed was to an entity related to Game Creek (RMS Funding), minimal funds would actually be exchanged in this reorganization,[5] and a majority of the funds would remain available to pay allowed claims. *Id.* Counsel for the Plaintiffs continued her inquiry and asked:

> Q.     Okay. The Plan proposes, as I understand it, to pay Equity Interest Holders a pro rata share of a [sic] $100,000, correct?
>
> A.     Yes, that's the bid.

*Id.* at p. 46, l. 8-11.

Even after this clarifying explanation by Joseph Lawrence at the April 23, 2025 evidentiary hearing on Plan confirmation, Plaintiffs continued to raise the argument that Arthur

---

[4] The apportioned $6.5 million was established to ensure that, in the event that the filed claim of Crivella Holdings Limited in the amount of $6,080,000 (Claim No. 2) was deemed to be valid, there would be sufficient funds available to fulfill the terms of the Plan. Ultimately, the Crivella Holdings Limited claim was denied by Order issued on August 29, 2025 (Doc. 431 in Main Case), and the majority of the allocated funds were surplus.

[5] Convertible Debt was assumed and converted into new equity in the Reorganized Debtor. *See Plan,* p. 10, ¶ 5.5.

Crivella should receive a share of the $6.5 million set aside when defending the Game Creek's *Objection to their Claim No. 2 and Request to Expunge* ("Claim Objection") (Doc. 195) by stating this very same argument in its *Brief in Opposition to the Motion for Summary Judgment* (Doc. 416 in Main Case). Ultimately, the Court found this argument lacked merit and granted the Debtor summary judgment on its Objection. Footnote 3 of the Court's August 29, 2025 Order sustaining the *Claim Objection* (Doc. 431 in Main Case) stated:

> An additional argument set forth by Crivella at the August 28th hearing and in Footnote 6 of its *Brief in Opposition to the Motion for Summary Judgment* ("Brief") (Doc. 416) is that in the event Claim 2 is disallowed, and Crivella's purported $6,080,000 claim is not paid pursuant to the License Agreement, the Plan calls for excess funds, i.e. the $6,080,000, to be paid to the prior equity holders of the Debtor. Counsel for Crivella has been involved in every stage of litigating the confirmed Plan, and to make this argument when the clear language of the Plan calls for a $100,000 payment to equity shareholders, which Crivella's own Brief in Opposition correctly recites at Paragraph 12, borders on a Rule 9011 issue. Needless to say, the Court will not entertain this unfounded argument as it has no bearing on the present Motion for Summary Judgment.

The above-quoted footnote accurately summarizes the Court's current view of Crivella's argument. Crivella is precluded from bringing this argument yet again for a third time in this case.

Similarly, at the April 23, 2025 confirmation hearing, Counsel for Crivella spent a large portion of time questioning Mr. Lawrence about his intention to partner with OWNLocal. At the hearing, Mr. Lawrence testified that at the time of the April 23, 2025 hearing, there was no deal to merge with OWNLocal, and while there had been "discussions, negotiations, and attempts" at the time of the hearing there was no deal in place. *Transcript,* p. 23, l. 15-17. Mr. Lawrence explained that the discussions related to possibly doing business with OWNLocal in the future in the context of either a continuing partnership with OWNLocal as a customer of MeSearch or an acquisition of OWNLocal as a subsidiary. *Id.* at l. 20-25. In any event, the Court found this entire

6

line of questioning to be totally irrelevant to Plan confirmation. The Court noted in its *Memorandum Opinion* on Plan confirmation (Doc. 341 in Main Case) that Mr. Lawrence sought permission from the Chapter 11 Trustee to continue developing the relationship with OWNLocal and to use OWNLocal's existing customer base that may have been willing to utilize the Debtor's product. *Transcript,* p. 39, l. 22 – p. 40, l. 9 and p. 64, l. 21 – p. 65, l. 2. The Court did not agree with Crivella's assertions that the discussions with OWNLocal resulted in the Plan being filed in bad faith or was a diversion of corporate interests and instead found that the Debtor was attempting to create future opportunities for itself. As to Mr. Lawrence's negotiations with OWNLocal, the Court's *Memorandum Opinion* noted that it was not

> of the opinion that Mr. Lawrence's communications with OWNLocal or future aspirations to either partner with or acquire OWNLocal have misled the Court in any way. There is nothing concrete regarding the parties' relationship that Game Creek needed to include in the *Second Amended Plan* or Disclosure Statement. The Court finds that the future operations of the Reorganized Debtor are irrelevant to whether or not the *Second Amended Plan* was filed in good faith, so long as the *Second Amended Plan* does not rely upon those future events to determine feasibility, which it does not in this case.

(Doc. 341 in Main Case), p. 11-12.

As a result of the foregoing examples of Plaintiffs ample participation litigating these identical issues and claims before this Court during the pendency of this Bankruptcy, Plaintiffs are estopped from once again doing so now under the theories of both res judicata and collateral estoppel. The Court will not allow the Plaintiffs in this adversary, which were the exact same Crivella parties that contested confirmation, to yet again assert identical arguments regarding the Debtor's relationship with OWNLocal and that Crivella is owed money under the Plan, when the Plaintiffs have already made these arguments and lost. Not only was the Plan confirmed despite these assertions, but the Plaintiffs' appeal of Plan confirmation was also withdrawn.

The Plaintiffs cannot be permitted to abandon their failed Plan confirmation arguments and then re-ignite them under the context of § 1144 fraud. Plaintiffs argue that the alleged postconfirmation conduct of the Defendant in its failure to fund and perform under the Plan, having a person affiliated with OWNLocal serve as CFO, and merging with OWNLocal gives rise to new causes of action under §1144. That is not the case. The *Complaint* involves an identical claim (not confirming the Plan) and identical issues (allegations of a merger with OWNLocal and Plan funding and payment of funds to equity security holders). The Plaintiff has already received a final judgment on the merits on whether these allegations were material to Plan confirmation, which the Court found they were not. *See In re California Litfunding, a Nevada Corp.,* 360 B.R. 310, 321-24 (Bankr. C.D. Ca. 2007)(Plaintiffs were precluded under res judicata from bringing forth a § 1144 claim when it involved identical arguments made at plan confirmation, and the Confirmation Order was a final judgment on the merits.). Therefore, under both the doctrines of res judicata and collateral estoppel, the Plaintiffs are precluded from raising these identical issues and the identical claim that the Plan should not be confirmed.

### *12(b)(6) Failure to State a Claim*

Throughout this case, Plaintiffs have asserted that they had a "smoking gun" that would inexplicably show they are entitled to the relief requested; however, the allegations have fallen flat in every instance. Section 1144 which allows a Confirmation Order procured by fraud to be revoked states:

> On request of a party in interest at any time before 180 days after the date of the entry of the order of confirmation, and after notice and a hearing, the court *may* revoke such order *if and only if* such order was procured by fraud… (emphasis added).

The Third Circuit has stated that "fraud" under this section requires "a showing of actual fraudulent intent." *In re Virgin Orbit, LLC,* 2025 WL 2741796 * 2 (3d Cir. Sept. 26, 2025). Even if all of the

8

allegations in the *Complaint* were proven to be true, they fail to state a claim under § 1144 that the Confirmation Order was procured by fraud. The Court finds that the Defendants did not misrepresent any information to the Court or creditors in order to secure the Confirmation Order. The Court has already heard ample testimony on this issue in determining the Plan was not filed in bad faith and that same testimony nullifies the Plaintiffs' arguments that the Confirmation Order was procured by fraud. In this Court's *Memorandum Opinion* on confirmation, the Court found that Lawrence's contact with OWNLocal was intended to create future opportunities for the Debtor, which is exactly what a Debtor in bankruptcy should be doing. The Court noted that there was nothing concrete about the relationship between the Debtor and OWNLocal at that time. The fact that the Reorganized Debtor may have hired a former employee of OWNLocal as its CFO post confirmation does not change this fact and does not evidence fraud.

Finally, at the January 22, 2026 hearing on the *Motion,* Plaintiffs argued that § 1144 should be invoked, since according to § 1129(a)(5), the plan proponent must disclose the identity and affiliations of individuals proposed to serve as a postconfirmation officer. Plaintiffs argue that Game Creek's failure to disclose Ocasio Flores as a future Chief Financial Officer of the Debtor violated § 1129(a)(5) which therefore led to the Confirmation Order being fraudulently procured under § 1144. The standard for revoking confirmatoin is not that Game Creek failed to comply with an element of § 1129, it is that its alleged failure to comply with §1129(a)(5) constituted fraud. Not only is this not alleged in the *Complaint,* but this allegation fails to state a claim because the Court simply did not rely on the future identity of the officers in its decision to confirm the Plan. Game Creek was not obligated to disclose any future purchaser or merger because at the time of confirmation there was no concrete deal for a purchase or merger with OWNLocal, and all that was required as disclosure was the postconfirmation officers of the

9

successor to the Debtor, which Game Creek did. *See In re River Village Associates,* 161 B.R. 127, 141 (Bankr. E.D. Pa. 1993); *Declaration,* ¶ 22.

This leads the Court to determine that the *Complaint*, while barred by the doctrines of res judicata and collateral estoppel as detailed, above, also fails to state a claim for which relief can be granted. As noted above, §1144 allows plan confirmation to be revoked if the order was procured by fraud. None of the alleged nefarious conduct set forth in the *Complaint* had any relevance to Game Creek procuring the Confirmation Order. The allegations contain concerns held only by the Plaintiffs, and the Plan was confirmed over the Plaintiff's objection. As pointed out above, the Plan did not rely on the Debtor's future operations for feasibility. The Reorganized Debtor was under no prohibition from doing business with OWNLocal, and clearly such relationship had no bearing on Plaintiffs supporting the Plan because Plaintiffs objected to the Plan, which was confirmed over their objection. There is no connection between the alleged fraudulent conduct and the Court's decision to confirm the Plan. *See In re Bennington,* 519 B.R. 545, 548 (D. Utah 2014). As was the case in *Bennington,* here, almost all of the allegations in the *Complaint* were raised at the hearing on confirmation, and therefore both the Court and creditors were made aware of these facts and arguments in considering whether to support Plan confirmation. *Id.* Plaintiffs cannot be said to have been fraudulently induced into supporting the Plan by not being provided this information because their support for the Plan did not exist and was not essential to confirmation. Further, the *Complaint* is woefully deficient in setting forth the elements to establish the confirmation order was procured by fraud. While it sets forth the alleged misrepresentations as noted above, it fails to allege

> (1) that the debtor made a representation regarding compliance with Code § 1129 which was materially false;

10

(2) that the representation was either known by the debtor to be false, or was made without belief in its truth, or was made with reckless disregard for the truth;

(3) that the representation was made to induce the court to rely upon it;

(4) that the court did rely upon it; and

(5) that as a consequence of such reliance, the court entered the confirmation order.

*In re Melinta Therapeutics, Inc.,* 623 B.R. 257, 264-64 (Bankr. D. Del. 2020). Lacking all of these essential elements, the *Complaint* fails to state a viable claim to revoke the Confirmation Order for fraud under § 1144.

### *Supplemental Argument Regarding State Court Litigation*

Once again, at the January 22, 2026 hearing on the *Motion,* Plaintiffs acted as if they had new[6] and damning information to bring to the Court's attention that may warrant the filing of a second amended complaint. The allegedly new information was that Defendants had recently filed a lawsuit against Plaintiffs in state court which sought to recover significant funds from Arthur Crivella, Crivella Holdings Limited, the Plaintiffs herein, and Crivella Technologies Limited, related to their pre-petition conduct with the Debtor. These were the same claims raised in Adversary Nos. 25-2048-JCM and 25-2049-JCM filed on August 7, 2025 that this Court dismissed for a lack of subject matter jurisdiction by orders dated October 22, 2025. *See* Orders at Doc. No. 15 and 14 in the respective proceedings.

After the hearing held on January 22, 2026, on January 29, 2026, Plaintiffs filed a ***Supplement to Response to Motion to Dismiss and/or Motion for Leave to Amend Complaint to***

---

[6] The state court litigation was filed as a result of this Court's dismissal of Adversary Proceedings 25-2048 and 25-2049 which were dismissed on October 22, 2025. The allegations raised in the state court proceedings cannot be considered to be "new information" since the Adversary Proceedings were filed on August 7, 2025.

***Revoke Confirmation Order*** ("Supplement") (Doc. 15). Although this *Supplement* was improperly filed without Court approval, the Court will accept the filing and consider the arguments contained therein now. For the following reasons, the allegations in the *Supplement* are insufficient to survive Defendants' *Motion,* and the Court will not allow further amendment since amending the *Complaint* to include these claims would be futile. *Goldfish Shipping, S.A. v. HSH Nordbank AG,* 623 F. Supp. 2d 635, 639 (E.D. Pa. 2009).

The crux of Plaintiffs' argument on this point at the time of hearing and in the *Supplement* is that the Debtor and Game Creek failed to disclose significant claims as assets in the Bankruptcy Case and, therefore, the alleged assets were not included in the liquidation alternative test analysis reviewed by the Court, and the value paid by Game Creek for the Debtor's assets pursuant to the confirmed plan may not have been appropriate or adequate. At the January 22, 2026 hearing, Defendants pointed out that the claims were in fact clearly identified in the Disclosure Statement and not hidden from the Court or creditors.

The *First Amended Disclosure Statement to Accompany Plan of Reorganization Dated January 17, 2025* ("Disclosure Statement") (Doc. 176 in Main Case), in Paragraph VIII(2) does clearly delineate a variety of claims against Crivella Holdings Limited, Crivella Technologies and Arthur Crivella as follows:

> 2. What, if any, litigation is proposed or contemplated?
>
> Potential claims against Crivella Holdings Limited belonging to the Debtor including, but not limited to
>
> - Crivella Technologies billed in excess of $2 million for services to the Debtor. According to Joseph R. Lawrence, the former CEO of the Debtor, there is a dispute as to the rates charged, the hours charged, and the quality of the work.
>
> - Additionally, some of the work billed for by Crivella Technologies to the Debtor is alleged to be focused upon improvements to the Knowledge Kiosk, also known as C360.

12

- All such work is alleged to have resulted in the ownership of intellectual property by the Debtor in the Knowledge Kiosk/C360. The knowledge Kiosk/C60 is alleged to be owned and/or operated by Crivella Holdings and Crivella Technologies.
- Crivella Holdings has alleged that there were scope violations of the MeSearch Software License Agreement by the Debtor and that these alleged violations would give rise to a right to terminate the MeSearch Software License Agreement. The Debtor has a cause of action to seek a declaratory judgment that there is no right to terminate the MeSearch Software License Agreement and that there were no scope violations.
- It is alleged by Joseph Lawrence that Arthur Crivella, or an entity controlled by Arthur Crivella, usurped corporate opportunities and took title to the intellectual property and operations of two mobile applications that were owned by a former lead developer of the Debtor.
- It is alleged by Joseph Lawrence that Arthur Crivella, acting as the Chief Technology Officer of the Debtor, deliberately delayed and interfered with software development and business prospects of the Debtor in an effort to seek unwarranted personal compensation

While the Court acknowledges that the claims were not identified on the schedules as assets, and the estimated value was not included in the liquidation alternative test, the Court does not believe such a disclosure would have altered the outcome of the case. In fact, had those significant claims against the Crivella entities been identified as assets, the Court is all but certain that the Crivella parties would have vehemently objected to the validity of those claims, leaving the Court in the same position as it was in without their inclusion on the schedules, i.e. an allegation in the Disclosure Statement that there were significant contested unliquidated claims against the Crivella parties.

Out of all of the participants in the case, the Plaintiffs were in the best position to evaluate the information set forth in the Disclosure Statement regarding the value of the claims against them. The Plaintiffs, as the defendants of the potential litigation, were aware of their

compliance with or breach of the requisite agreements with the Debtor, whether or not there were any valid claims against them, and if so, the value of the claims. As defendants to the state court lawsuit, the Court surmises that defendants believe the claims are valueless. In any event, despite raising objections to both the Disclosure Statement and at Plan confirmation, Plaintiffs remained silent on whether the value of the litigation should be considered in confirming the Plan. Raising those claims and admitting liability on the claims asserted by the Debtor apparently would not have been in their best interest, and therefore Plaintiffs chose to stay silent. To now assert that the failure by Game Creek to more fully describe those claims warrants the revocation of the Confirmation Order due to fraud is disingenuous. Therefore, Plaintiffs are precluded under the doctrine of res judicata from bringing forth this issue now.

The Plaintiffs are so barred from bringing the supplemental claims under res judicata since they were parties to the Plan confirmation proceedings, had a full and fair opportunity to litigate the issue and chose not to, received a final judgment on the merits in the form of the Confirmation Order, appealed the Confirmation Order, and withdrew their appeal. *See In re Northfield Laboratories Inc.,* 467 B.R. 582 (Bankr. D. Del. 2010) (claim preclusion "bars re-litigation of claims that were or could have been litigated in a prior action between the same parties, if a final judgment on the merits was issued in the same prior action. *CoreStates Bank, N.A. v. HulsAmerica, Inc.,* 176 F.3d 187, 194-95 (3d Cir. 1999). Claim preclusion applies to confirmed plans of reorganization, just as it does to any final judgment on the merits."). Plaintiffs were on notice that these potential claims existed and did not object to the value of the claims as listed in the Disclosure Statement despite being the defendants to the potential claims and being in the best position to evaluate their value to the estate. Therefore, Plaintiffs are bound by the confirmed Plan.

Finally, the *Supplement* fails to contain allegations that meet the standard of § 1144, since the effect the potential claims would have had on the Plan is speculative, and Game Creek's postconfirmation action of filing the state court litigation as set forth in the Disclosure Statement does not indicate fraud was committed on the Court. The only two equity security holders, Arthur Crivella (52%) and Game Creek (48%), the successor of the Debtor under the Plan. *List of Equity Security Holders,* (Doc. 93 in Main Case), p. 24. This means the only beneficiaries of the potential litigation claims would have been Arthur Crivella and Game Creek. Since Arthur Crivella is one of the named defendants in the state court litigation against whom a recovery is sought, it is counterintuitive that he, as one of the Plaintiffs in this Adversary, is making the circular argument that the lawsuit brought against him would bring value to the estate that would have benefited him. The fact that the Plan was confirmed without accounting for potential funds paid from Arthur Crivella from the state court actions that would ultimately be partially paid back to Arthur Crivella as an equity security holder does not equate to fraud under § 1144.

Based upon the foregoing, the Court finds that the additional claims in the *Supplement* that Plaintiffs wish to add to the *Complaint* are barred under the doctrine of res judicata and fail to state a claim under 11 U.S.C. § 1144. Therefore, the Court will not allow an amended complaint to be filed as it would be dismissed for the reasons stated above.

### *Defendants' Request for Attorney's Fees*

The fact that Plaintiffs' Counsel continues to set forth these arguments that have repeatedly been overruled by the Court is concerning and as previously noted in the prior opinion borders on a Rule 9011 violation. This is now the third time these arguments have been raised (the first two being at Plan confirmation and during litigation of the *Claim Objection*). Plaintiffs withdrew their appeal to the confirmed Plan, and they did not appeal the Order sustaining the

*Claim Objection*. Therefore, it is improper for Plaintiffs to bring this argument a third time, albeit in a somewhat different context. Game Creek has made its position on all issues raised in the *Complaint* abundantly clear on the record many times throughout this case, and for Plaintiffs to feign ignorance of the prior proceeding and act as if they were duped is ingenuine. Although creditors have a right to set forth causes of action under § 1144, the Plaintiffs have already received multiple decisions from this Court that Game Creek's *Declaration* of the availability of Plan funding and the Debtor's dealings with OWNLocal were adequately disclosed prior to confirmation. Defendants seek attorneys' fees and costs incurred in defending the *Complaint*, arguing that this is vexatious litigation under 28 U.S.C. § 1927. Here, Plaintiffs' Counsel is testing the bounds of zealous representation and advocacy, however, the Court concludes that Plaintiffs' conduct does not rise to the level of vexatiousness[7] and will deny Defendants' request for attorney's fees in litigating this *Motion*. The Court cautions that if these arguments are somehow brought forth by Plaintiffs again, a request for sanctions under Rule 9011 would be entertained.

## CONCLUSION

For the reasons stated above, Defendant's *Motion* is GRANTED. The Court will issue an Order in accordance with this Memorandum Opinion.

Dated: February 3, 2026

BY THE COURT:

SIGNED
2/3/26 10:19 am
CLERK
U.S. BANKRUPTCY
COURT - WDPA

John C. Melaragno, Judge
United States Bankruptcy Court

---

[7] Although it was improper for the Plaintiffs to yet again set forth these arguments that have already failed twice before this Court, the Court sees the *Complaint* as a last-ditch effort by the Plaintiffs and not something that was done in "bad faith, vexatiously, wantonly, or for oppressive reasons" which would warrant attorneys' fees. *See Hall v. Cole,* 412 U.S. 1, 5 (1973).